IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:01CR3063 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| vs. | ) | **AND ORDER** |
| | ) | |
| LAMONT O. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before me for initial review of the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 motion") filed by the defendant, Lamont O. Smith (Filing 156).[1]  The defendant claims his lawyer was ineffective, but his motion is insufficient and the files and records conclusively disprove his claims.  Thus, the motion will be denied.

## I.  BACKGROUND

I will first skim the procedural history of this case.  After that, and although vastly oversimplified, I highlight the evidence.

_____

[1] Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> The judge who receives the motion must promptly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.  If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

### *Procedural History*

Lamont O. Smith ("Smith") was convicted after a jury over which I presided found him guilty of possession with intent to distribute more than 50 grams of crack cocaine.  (Filing 76 (Minutes); Filing 80 (Jury Verdict).)  John Vanderslice, an experienced and talented federal public defender, represented the defendant.

I sentenced Smith to 121 months in prison.  (Filing 123 (Judgment).)  Smith perfected a timely appeal. (Filing 124 (Notice of Appeal).)  The Court of Appeals affirmed the conviction.  (Filings 148 & 149 (Opinion and Mandate).)[2]  Smith filed a petition for rehearing and petition for rehearing en banc with the Court of Appeals. (See "Case Summary" of Records of Eighth Circuit Court of Appeals, available at "PACER" for Docket Number 03-3485.)  The Court of Appeals denied those petitions.  (Id.)

After the Court of Appeals ruled against him, Smith filed a petition for writ of certiorari within the 90-day window allowed by Rule 13 of the Rules of the Supreme Court.  (Id.)  In the meantime, and before the petition for writ of certiorari was ruled upon by the Supreme Court, Smith filed his § 2255 motion in this court.  (Filing 156.) I held the case in abeyance until the Supreme Court ruled.  (Filing 157.)  On April 3, 2006, I was notified that the Supreme Court denied Smith's petition.  (Filing 158.) The case is now ready for initial review.

### *Evidence Highlights*

The defendant grew up in California.  Smith came to Lincoln, Nebraska, in 2000.  After that, and despite the fact that he is blind, Smith traveled back and forth

---

[2]United States v. Smith, 383 F.3d 700 (8th Cir. 2004), cert. denied, 126 S. Ct. 1567, 74 U.S.L.W. 3530 (Mar 20, 2006).

2

between Los Angeles and Lincoln.   As particularly relevant to the charges in this case, an airline receipt showed that Smith returned to Nebraska from California on April 15, 2001.

On April 13, 2001, a Hawthorne, California, police officer, who was participating in a "parcel interdiction" operation at a Federal Express ("FedEx") facility in Hawthorne, removed a suspicious looking package from a conveyor belt. After removing the package, she gave it to a detective, who, also believing the package to be suspicious, decided to submit it to a canine sniff.  The dog alerted to the package, signifying that it contained illegal drugs.  The box was opened by a FedEx employee, revealing a pair of children's rubber boots.  Inside one of the boots, the employee found a ball of clear tape containing a white substance. The package was taken to the Hawthorne police station, where it and its contents were examined and photographed.  The package was later resealed and returned to the FedEx facility for controlled shipment to the recipient address in Lincoln, Nebraska.

On April 16, 2005, a controlled delivery of the package was executed in Lincoln, Nebraska, and the package was accepted by Smith, who signed for the package and identified himself to the undercover officer as "Sergio Munoz."   The evidence showed that the addressee on the package was Janice Murray, one of the defendant's girl friends.   The return address on the package contained the name Lamont Smith.  After the package was delivered and a search warrant executed at the residence where the defendant and the package were located, Smith told the police that the box contained computer equipment.

At trial, there was no dispute that the package contained 122.38 grams of crack cocaine.  The parties stipulated that a forensic chemist with the State of Nebraska would so testify.

Smith took the witness stand.  Smith testified that he was blind, and that disability was undisputed by the government.  Smith essentially said that he had been set up by his friend Dre, that he did not know the package contained crack cocaine, that he did not deal drugs, and that he used an alias because he did not like his given name.  Even though he claimed not to know what the package contained when he signed for it, he testified that he had told the police the package contained computer equipment in order to protect his friend Dre.

Smith put his character at issue.  He produced documentary evidence and called several character witnesses from California and New York, all with the purpose of showing that he was a law-abiding person.

The government produced a rebuttal witness who testified that she had previously bought crack cocaine from Dre and "Sergio" in Lincoln, Nebraska.  She identified "Sergio" as the defendant, and she indicated that she recalled "Sergio" because of his lack of eye sight.

## II.  ANALYSIS

Condensed,  Smith claims that his lawyer was ineffective because (1) at trial, counsel entered into a stipulation regarding cocaine base; (2) counsel failed to obtain a plea bargain from the prosecutor; (3) counsel failed to have the defendant examined for physical and mental problems before allowing the defendant to testify; (4) counsel failed to investigate the background of a police officer (Greg Sims) who testified at trial; and (5) counsel failed to call certain defense witnesses to testify at trial.[3] (Filing 156.)

---

[3]To the extent that Smith's rambling § 2255 motion raises other claims against his lawyer or otherwise, I have found them wanting because they are conclusory.

-4-

In order to prevail on his claim that his counsel rendered ineffective assistance of counsel, Smith must show (1) that "'counsel's representation fell below an objective standard of reasonableness'" and (2) that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Nguyen v. United States, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). An evidentiary hearing is unnecessary if the movant makes an insufficient preliminary showing on either or both prongs. Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact").

### Overview

As an initial matter, Smith does not claim that he is innocent. Rather, he explicitly seeks "the opportunity to enter a guilty plea in [the] form of a plea agreement." (Filing 156, at 9 (Conclusion).) Thus, and as to all the claimed trial errors, Smith's motion facially fails to establish that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the trial would have (or should have) been different. Notwithstanding this overarching deficiency, I will next briefly examine his specific claims.

### The Stipulation

At trial, defense counsel stipulated with the government that if a forensic chemist were called to testify, she would testify that the package Smith signed for contained 122.38 grams of cocaine base. (Filing 132, at CM/ECF pp. 112, 116-117 (Trial Transcript).) The defendant argues that his lawyer's decision to so stipulate

amounted to an unprofessional error and that error harmed him.  I reject Smith's claim regarding the stipulation.

First, this is the sort of sensible decision that good defense lawyers make all the time.  There is nothing in Smith's motion or the files and records of this case to indicate otherwise.  Indeed, my "scrutiny of counsel's performance must be highly deferential" and I must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Reed v. United States, 106 F.3d 231, 236 (8th Cir. 1997) (affirming denial of § 2255 motion where petitioner claimed that he was denied effective assistance of counsel at trial).

Moreover, the premise for Smith's concern is unfounded.  Smith seems to think that if his lawyer had not so stipulated, then the lawyer could have argued or proven that the crack cocaine contained a lot of baking soda or other impurities and, thus, he was not responsible for 50 grams or more of crack.  He is mistaken.  Smith could not have avoided the 50-gram threshold with his "baking soda" argument.   The statute under which Smith was charged, 21 U.S.C. § 841(b)(1)(A)(iii), penalizes a mixture or substance containing crack cocaine.  The jury found that Smith was responsible for 50 grams or more of a mixture or substance containing crack cocaine.  (Filing 80, at 2 (Verdict Form).)  Thus, the composition or purity of the drug was not material.

Second, there is not the slightest reason to think the stipulation was factually incorrect as to the character of the drug or the quantity of the substance.  As a result, Smith cannot plausibly claim that the result of his trial or sentencing would have been different had the stipulation not been made.

### *Plea Bargain*

Smith faults his lawyer because the lawyer "failed to negotiate a ple[a] agreement" even though he also concedes that a "deal was never offered to

defend[a]nt at any time during the p[re]liminary process of court proceeding[s]." (Filing 156, at 5.)  Simply put, the <u>prosecutor's</u> decision not to offer a plea agreement does not suggest that <u>defense counsel</u> erred.

### *Physical and Mental Evaluation*

Smith attacks his lawyer because the lawyer "failed to have defendant examined both physically and mentally prior to letting the defendant take the stand in court."  (Filing 156, at 4.)  He also criticizes his lawyer because counsel failed to "interview[]" Smith to determine if he was able to withstand the stress of trial.  (<u>Id.</u>)

While it is true that Smith was blinded after being caught in the middle of a gunfight in 1993 (<u>e.g.,</u> Presentence Report ¶ 44),[4] the files and records show that his disability was not so severe that counsel can be faulted for not having Smith examined or by allowing Smith to undergo the stress of testimony.   For example, the trial evidence showed that Smith was able to care for himself,[5] engage in relationships with women and father children, and travel about the country.  The transcript (which is in conformity with my memory) also shows that Smith was able to testify coherently and without trouble.  (Filing 133, at CM/ECF pp. 4-46 (Trial Transcript).) In addition, the Presentence Report (to which there was no objection) also revealed that after Smith became disabled, he completed his "GED" from the Occupational Center of East Los Angeles, enrolled in an independent living program in 1995, and attended Santa Monica Junior College in California from 1997 until 1999.  (PSR ¶ 47.)

--------

[4]Based upon this disability, defense counsel filed a motion for a sentencing departure (Filing 110), with supporting brief (Filing 111), which I denied.  (Filing 112.)

[5]He received $819 per month from the Social Security Administration.  (PSR ¶ 48.)

In summary, Smith's unfortunate disability serves as no basis for attacking his lawyer's performance because the files and records conclusively establish that the disability failed to impede or impair the defendant in any meaningful way.  See, e.g., Vogt v. United States, 88 F.3d 587, 592 (8th Cir. 1996) (despite the fact that defendant suffered from mental disorder that required hospitalization before and after trial, his § 2255 motion attacking counsel as being ineffective for failing to seek competency hearing properly denied where defendant's "behavior and demeanor" during trial was "unexceptional").

### Sims

Smith goes after his lawyer because the lawyer failed to look into the "criminal background history" of the trial witness "Greg Simms"[6] to "determine if he was creditable [sic] [to testify] for the United States Government."  (Filing 156, at 4.) Smith gives no reason why Sims, an experienced drug investigator who worked for the Lincoln police department for 28 years (Filing 132, at CM/ECF pp. 83-84 (Trial Transcript)), should have been the subject of a background check of some type. Bluntly put, Smith's complaint about his lawyer's failure to investigate Sims is fanciful.

### Defense Witnesses

Smith is critical of his lawyer for failing to make travel arrangements for Johnny Bulldog and Denise Derilos so that they could testify for Smith. (Filing 156, at 8.)  He also attacks counsel for not calling "Keith Neal to testify when he arrived to Nebraska the day of trial."  (Id.)  Smith concedes that counsel "interviewed these witnesses," but Smith fails explain what these people might have said.  (Id.)

---

[6]The witness's correct name is Gregory Sims.  (Filing 132, at CM/ECF p. 83 (Trial Transcript).)

Recognizing that defense counsel put on three witness from California and New York to testify for Smith,[7] that Smith's counsel was aware of and had interviewed the other witnesses, and that Smith fails to articulate how these other witnesses might have helped him, I reject the complaint.  Smith's mere conclusions are not sufficient.

Accordingly,

IT IS ORDERED that the defendant's § 2255 motion (filing 156) is denied with prejudice in all respects, and a separate judgment shall be entered.

April 17, 2006.

BY THE COURT:
s/ *Richard G. Kopf*
United States District Judge

---

[7]Those witnesses were: David E. Morris (Filing 132 at CM/ECF pages 139-168 (Trial Transcript)); Glen Ford Gladden (Filing 132 at CM/ECF pages 168-184 (Trial Transcript)); and Stacy Garbutt (Filing 132 at CM/ECF pages 188-209 (Trial Transcript)).